**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIGHTSEER ENTERPRISE, INC., | |
| Plaintiff, | Civil Action No. 18-16122 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| VERIZON NEW JERSEY, INC., et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Verizon New Jersey, Inc. and Verizon Communications, Inc.'s ("Defendants") Motion to Compel Arbitration and for Partial Summary Judgment. (ECF No. 27.) Plaintiff Sightseer Enterprise, Inc. ("Sightseer") opposed (ECF No. 29), Defendants replied (ECF No. 35), and Sightseer filed a sur-reply (ECF No. 41). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion is denied without prejudice.

## I.   BACKGROUND

This case concerns the vanity telephone number "1-800-2GoWhaleWatching" (the "Vanity Number"). (*See generally* Compl., ECF No. 1.) Sightseer "is a family[-]owned business which has been leading whale and dolphin watching boat tours in Wildwood, New Jersey since 1954." (*Id.* ¶ 2.) For twenty-five years, Sightseer had a controlling interest in the Vanity Number and used it to promote its tours. (*Id.* ¶¶ 1, 3, 5, 7.) According to Sightseer, the Vanity Number was (1) "painted across its boat," (2) "printed on fliers distributed to stores and restaurants throughout Wildwood,"

(3) "featured online in social media," (4) "printed in local newspapers," and (5) "easy for satisfied customers to remember." (*Id.* ¶ 8.)

"Due to the seasonal nature of their business, Sightseer contacted Defendants (or Defendant[s'] predecessor, AT&T, prior to 2011) annually to place a seasonal hold on its Vanity Number from October through April." (*Id.* ¶ 9.) On or about October 3, 2016, Sightseer contacted Defendants to request the annual hold, "with instructions to re-activate [the Vanity Number] on May 20, 2017." (*Id.* ¶ 10.) According to Sightseer, however, instead of placing the hold, "Defendants entered a disconnect order for the . . . Vanity Number." (*Id.* ¶ 11.) The Vanity Number was then disconnected and "held in reserve for 120 days." (*Id.* ¶¶ 12–13.) During this time, Sightseer maintains it did not know—and had no reason to know—that the Vanity Number was disconnected. (*Id.* ¶¶ 14–15.) During the summer of 2017, after hearing from customers that the Vanity Number no longer reached the business, Sightseer contacted Defendants. (*Id.* ¶¶ 17–18.) According to Sightseer, Defendants informed Sightseer that the Vanity Number had been reassigned by mistake and "nothing could be done" to correct the error. (*Id.* ¶¶ 19–21.)

On November 14, 2018, Sightseer filed the instant action against Defendants asserting violations of the Communications Act of 1934 (specifically, 47 U.S.C. § 201(b) (Claim One) and 47 U.S.C. § 201(a) (Claim Two)), and negligence (Claim Three). (*See generally id.*) Sightseer asserts that the disconnection and reassignment of the Vanity Number caused damages in the form of past and future lost revenue and unusable promotional materials. (*Id.* ¶¶ 48, 57, 62.) Defendants now move to compel arbitration and dismiss Sightseer's Complaint or, alternatively, for partial summary judgment. (ECF No. 27.) Defendants argue that the service agreement between the parties for the Vanity Number "expressly provides . . . that, among other things, disputes must be arbitrated . . . and the parties waive any right to a jury trial." (Defs.' Moving Br. 2–3, ECF No. 27-4.)

## II.   LEGAL STANDARD

Congress enacted the Federal Arbitration Act, 9 U.S.C. §§ 1-14 ("FAA"), to thwart "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA creates a body of "federal substantive law" establishing the duty to respect arbitration agreements. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009). Pursuant to the FAA, "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Because arbitration is a matter of contract, . . . before compelling arbitration pursuant to the [FAA], a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citations omitted). "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "By contrast[, however], '[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that [it] do so.'" *Hejamadi v. Midland Funding, LLC*, No. 18-13203, 2019 WL 4855624, at *2 (D.N.J. Oct. 2, 2019) (alteration in original) (quoting *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)).

## III.   DISCUSSION

Defendants assert that the telephone services they provided to Sightseer—which included the Vanity Number—were subject to "Verizon Long Distance General Terms and Conditions" and "Verizon's Service Agreement" (the "Agreements"). (Defs.' Moving Br. 2, 7.) Defendants maintain that Sightseer assented to the Agreements by using Defendants' services, and by receiving and paying Verizon invoices. (*Id.*) According to Defendants, the Agreements include

3

"plain provisions providing that disputes such as this matter are to be resolved via binding arbitration." (*Id.* at 6.) Moreover, Defendants contend that the Agreements "plainly state[], in bold, capitalized terms" that any disputes between the parties are to be resolved without litigation, and only by arbitration or in small claims court. (*Id.* at 6–7; *see also* General Terms and Conditions 13–14, Ex. E to Bocanegra Certif., ECF No. 27-3.) Defendants, therefore, argue that Sightseer "was on plain notice that its continued use of [Defendants'] services [was] subject to the [Agreements]" and, accordingly, "accepted those terms, including the agreement to arbitrate disputes, when it elected to continue receiving services from [Defendants]." (Defs.' Moving Br. 7.)

Sightseer asserts that "there is nothing provided in support of Defendants' motion which proves, or even alleges, that Sightseer agreed to, or even saw, the limitation of liability and arbitration clauses at issue." (Pl.'s Opp'n Br. 7, ECF No. 29.) Sightseer also maintains that, "[e]ven if [its] receipt of [the Agreements was] not an issue of disputed material fact, the limitation of liability clause advocated by [Defendants] makes no reference to 'disconnection' or 'reassignment.'" (*Id.* at 8.) Sightseer additionally argues that "the provisions containing reference to arbitration are convoluted and confusing, raising the possibilities of mediation, arbitration, small claims court, and conventional courtroom access and a jury waiver." (*Id.* at 9; *see also id.* at 17 ("But even if Sightseer was arguendo found to have been on notice of the arbitration clause, it is unenforceable because it was neither clear nor unambiguous.") (emphasis omitted).)

In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013), the Third Circuit provided the standard for district courts to apply in deciding a motion to compel arbitration. The Third Circuit stated:

> [W]hen it is apparent, *based on the face of a complaint[] and documents relied upon in the complaint*, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its

> supporting documents are unclear regarding the agreement to
> arbitrate, or if the plaintiff has responded to a motion to compel
> arbitration with additional facts sufficient to place the agreement to
> arbitrate in issue, then the parties should be entitled to discovery on
> the question of arbitrability before a court entertains further briefing
> on [the] question.

*Id.* (alteration in original) (emphasis added) (internal citations and quotation marks omitted); *see also id.* at 774. The Third Circuit further held that "a Rule 12(b)(6) standard is inappropriate when . . . the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate[.]" *Id.* (internal quotation marks omitted).

Here, the Court finds that the Complaint lacks the requisite clarity to establish on its face that the parties agreed to arbitrate. The Complaint merely alleges violations of the Communications Act of 1934 (specifically, 47 U.S.C. § 201(a) and § 201(b)) and negligence, without making any allegations regarding arbitrability or the underlying Agreements. Nor are the Agreements "*integral to or explicitly relied* upon in the complaint." *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . . [A]n exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (alteration in original) (emphasis omitted)). When a plaintiff has relied upon extraneous documents in framing its complaint, "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated[.]" *Id.* Because, in the present case, the Agreements and their alleged arbitration provisions were raised for the first time in Defendants' instant motion and accompanying brief, consistent with *Guidotti* and

*Burlington Coat Factory*, the Court may not consider these documents under a Rule 12(b)(6) standard.

Furthermore, the Court declines to convert Plaintiff's Motion to Compel Arbitration into a motion for summary judgment. Generally, "[w]hen a [d]istrict [c]ourt decides to convert a motion to dismiss into a motion for summary judgment, it must provide the parties 'reasonable opportunity' to present all material relevant to a summary judgment motion." *In re Rockefeller Ctr. Props., Inc. Secs. Litg.*, 184 F.3d 280, 287-88 (3d Cir. 1999) (reversing a district court's decision to convert a motion to dismiss into a motion for summary judgment where the court "fail[ed] to provide notice" of conversion). But when a motion to dismiss has been "framed in the alternative as [a] motion[] for summary judgment," the non-moving party has constructive notice of the conversion. *Id.* at 288. In the current case, however, Defendants gave notice of their motion "for an [o]rder compelling arbitration, or in the alternative, granting partial summary judgment to Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure limiting Plaintiff's damages and dismissing Plaintiff's jury trial demand." (Defs.' Notice of Motion, ECF No. 27.) While the current Motion before the Court clearly seeks summary judgment on certain issues, it did not, however, give notice of Defendants' intent to seek summary judgment on the issue of arbitrability. The Court, accordingly, will not convert the current Motion into a motion for summary judgment.

"Because the question of arbitrability cannot be resolved without considering evidence extraneous to the pleadings, it would be inappropriate to apply a Rule 12(b)(6) standard in deciding the instant motion." *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018); *see also Guidotti*, 716 F.3d at 774; *Hejamadi*, 2019 WL 4855624, at *3–4; *Tailor v. Midland Funding, LLC*, No. 18-11320, 2019 WL 494622, at *4 (D.N.J. Feb. 7, 2019). The Court, therefore, denies Defendants' Motion to Compel Arbitration and for

Partial Summary Judgment without prejudice and orders the parties to conduct limited discovery regarding the issue of arbitrability.[1] Once completed, Defendants may file a renewed motion to compel arbitration, which will be reviewed under a summary judgment standard pursuant to Federal Rule of Civil Procedure 56. *See Guidotti*, 716 F.3d at 776.

IV.   **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Compel Arbitration and for Partial Summary Judgment is denied without prejudice. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[1] Because the Court orders limited discovery regarding the issue of arbitrability, it will not reach Defendants' arguments for partial summary judgment.