<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SIGHTSEER ENTERPRISE, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**VERIZON NEW JERSEY INC.,** *et al.***,**<br><br>Defendants. | Civil Action No. 18-16122 (ZNQ) (TJB)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Compel Arbitration ("the Motion") filed by Defendants Verizon New Jersey Inc. and Verizon Communications Inc. (collectively, "Defendants").[1] (ECF No. 48.) Defendants filed a brief in support of the Motion ("Moving Br.", ECF No. 48-11), along with a Statement of Material Undisputed Facts ("Defs' SMUF", ECF No. 48-10). Plaintiff opposed the Motion, filing a brief in opposition ("Opp'n Br.", ECF No. 51), a Responsive Statement of Material Facts ("Plf's RSMF", ECF No. 51-1) and a Certification of Charles Schumann ("Schumann Cert." ECF No. 51-1, Ex. A). Defendants replied. ("Reply Br", ECF No. 52.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Compel Arbitration will be GRANTED.

---

[1] Defendants' Motion is labeled as one for Summary Judgment, but it actually seeks to compel arbitration, using the summary judgement standard, as they were previously authorized to do by the Honorable Michael A. Shipp, U.S.D.J. (ECF No. 42.) The Court therefore will construe this Motion as a Motion to Compel Arbitration.

**I.     PROCEDURAL HISTORY**

On November 14, 2018, Plaintiff filed its Complaint against Defendants. (ECF No. 1.) Defendants filed a motion for partial summary judgment on June 24, 2019. (ECF No. 13.) The Court denied Defendants' motion as deficient under Local Civil Rule 56.1, but ordered Defendants to file a new motion for patrial summary judgment by January 31, 2020. (ECF No. 23.) After granting three extension requests, (ECF Nos. 24, 25, 26), Defendants filed the new motion for partial summary judgment and a motion to compel arbitration. (ECF No. 27.) On February 1, 2021, the Court denied Defendants' Motion to Compel Arbitration without prejudice and ordered the parties to conduct limited discovery regarding the issue of arbitrability. (ECF No. 43.) The Court, however, did not reach Defendants' arguments for partial summary judgment because of the arbitrability issue. On April 9, 2021, Defendants filed the instant Motion to Compel Arbitration. (ECF No. 48.)

**II.    FACTUAL BACKGROUND**

The Court relies on and incorporates the factual background set forth in the Court's Opinion denying Defendants' Motion to Compel Arbitration or for Partial Summary Judgement. (ECF No. 43 at 1–2.) The Court will briefly summarize the facts below.

Plaintiff Sightseer Enterprise ("Plaintiff") is a family-owned business which has been leading whale and dolphin watching boat tours in Wildwood, New Jersey since 1954. (Compl. ¶ 2.) For twenty-five years, Sightseer has had a controlling interest in the vanity number "1-800-2GoWhaleWatching" (the "Vanity Number") to promote its tours. (*Id*. ¶¶ 1, 3, 5, 7.) Due to the seasonal nature of its business, Plaintiff contacted its phone provider annually to place a seasonal hold on the Vanity Number from October through April. (*Id*. ¶ 9.) On October 3, 2016, Plaintiff contacted Defendants to request their annual hold with the instruction to re-activate the Vanity

2

Number on May 20, 2017.  (*Id*. ¶ 10.)  Plaintiff claims that instead of placing the Vanity Number on hold, Defendants entered a disconnect order for the Vanity Number.  (*Id*. ¶ 11.)  Plaintiff maintains that it did not know and had no reason to know that the Vanity Number had been disconnected.  (*Id*. ¶ 14–15.)

After hearing from its customers that the Vanity Number no longer reached its business, Plaintiff contacted Defendants.  (*Id*. ¶ 17–18.)  Defendants informed Plaintiff that the Vanity Number had been reassigned by mistake and there was nothing that could be done to correct the error.  (*Id*. ¶ 19–21.)

The Court finds these additional facts to be undisputed:

Plaintiff received three separate paper invoices from Verizon in May 2014 ("May 2014 Invoice"), July 2015 ("July 2015 Invoice"), and September 2015 ("September 2015 Invoice") (collectively, "the Invoices").  (Defs' SMUF ¶¶ 1, 2, 3; Plf's RSMF ¶¶ 1, 2, 3.)  The May 2014 Invoice contained the following notice:

> **Verizon Product Guide Now Available Online**
> On or after July 14, 2014, Verizon New Jersey Inc. will launch a new online Product Guide at verizon.com/tariffs with the service descriptions, rates and other terms and conditions that apply to your services. This online Product Guide replaces Verizon's tariffs for competitive services previously filed with the New Jersey Board of Public Utilities.
>
> To view the Product Guide, go to verizon.com/tariffs and click the map of New Jersey. Next, select the "X" for Verizon Telephone Operating Companies Non-Tariffed Documents and you will see the Product Guide.
>
> This change does not affect the prices or the terms or conditions of the services to which you currently subscribe. By ordering, using, or paying for the services, you agree to the prices, terms and conditions as shown in the Product Guide and to any future changes made by Verizon, including price increases, with advance notice to you, as described in the Product Guide. If you have any questions, visit verizon.com or call the toll-free number on your bill.

(Defs' SMUF ¶ 1; Plf's RSMF ¶ 1.)

The July 2015 Invoice contained the following notice:

> **Product Guide with Terms of Service for De-tariffed Services**
> On or after September 1, 2015, the service descriptions, rates and other terms and conditions that apply to all intrastate intraLATA competitive services will be contained in Verizon New Jersey Inc.'s Product Guide available at verizon.com/productguides. Verizon's Tariff B.P.U. No. 7 - Exchange and Network Services, which was previously filed with the New Jersey Board of Public Utilities, will be withdrawn. By ordering, using, or paying for the services, you agree to the prices, terms and conditions as shown in the Product Guide and to any future changes made by Verizon, including price increases, with advance notice to you, as described in the Product Guide. If you have any questions, visit us at verizon.com or call the toll-free number on your bill.

(Defs' SMUF ¶ 2; Plf's RSMF ¶ 2)

Finally, the September 2015 Invoice contained the following notice:

> **Important Information Regarding Your Long Distance Service Agreement**
> In follow up to last year's merger of Verizon Enterprise Solutions LLC into Verizon Long Distance LLC, we have updated your Service Agreement and consolidated the Product Guides that are also a part of your Service Agreement. The introductory paragraphs about the history and dates of de-tariffing have been removed from the Service Agreement. Other changes include the addition of certain provisions already contained in the Product Guide, such as the terms requiring the resolution of any claims or disputes solely by arbitration or small claims court. You can view the current version of your Agreement at www.verizon.com/longdistanceserviceagreement
>
> This Service Agreement covers long distance services provided by Verizon Long Distance as well as de-tariffed regional toll services provided by your local Verizon company. By using or paying for these calling services, you are agreeing to the terms of the Service Agreement, including the Product Guides. Please review these important terms. If you are unable to access the Service Agreement on line, please call 1-800-VERIZON for assistance.

(Defs' SMUF ¶ 3; Plf's RSMF ¶ 3.)

Plaintiff continued to use and pay for Defendants' services after receiving and paying the Invoices. (Defs' SMUF ¶ 10; Plf's RSMF ¶ 10.)

Plaintiff claims it never visited the websites listed within the Bills. (Schumann Cert. ¶ 7.) Plaintiff's owner, Charles Schumann ("Schumann"), owned and resided at the property address on each of the Invoices in the calendar years 2014 and 2015. (Defs' SMUF ¶ 4; Plf's RSMF ¶ 4.) Plaintiff completed and returned to Defendants the original payment slip attached to each of the Bills with its payment. (Defs' SMUF ¶ 7; Plf's RSMF ¶ 7.)

The parties dispute whether the arbitration clause contained within the invoices created a consent to compulsory arbitration. (*See* Opp'n Br. at 11; Moving Br. at 6.)

## III. LEGAL STANDARD

In determining whether a valid arbitration agreement exists, a court must decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint[.]" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted). However,

> [w]here the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record.

*Noonan v. Comcast Corp.*, Civ. No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) (citing *Guidotti*, 716 F.3d at 776). In such circumstances, "the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists."

*Ross v. CACH, LLC*, Civ No. 14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015). Afterwards, "the court may entertain a renewed motion to compel arbitration, this time judging the motion under a [Rule 56] summary judgment standard." *Guidotti*, 716 F.3d at 776. Under this standard, the Court must determine whether a genuine issue of material fact remains regarding whether the parties agreed to arbitrate. *Id*. at 780.

When considering the motion to compel under the Rule 56 standard, "the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *SBRMCOA v. Bayside Resort Inc.*, 707 F.3d 267, 271 (3d Cir. 2013) (quoting *Kaneff v. Delaware Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009) (internal quotation marks omitted)). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id*. (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 (3d Cir. 1980)).

## IV.    DISCUSSION

### A.    WHETHER THE PARTIES HAVE AN AGREEMENT TO ARBITRATE

To determine whether parties agreed to arbitrate, courts turn to "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Insofar as arbitration is a matter of contract, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964), before compelling arbitration pursuant to the Federal Arbitration Act (the "FAA"), a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp*, 401 F.3d 529, 532 (3d Cir. 2005). The FAA "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d

Cir. 2003)). The presumption in favor of arbitration, however, "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* at 160 (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Because arbitration is a "matter of contract" between two parties, "a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti,* 716 F.3d at 771 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). Pursuant to the FAA, a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *Id*.

To prove the existence of a valid contract, a party must show that: (1) there was a meeting of the minds; (2) there was an offer and acceptance; (3) there was consideration; and (4) there was certainty in the terms of the agreement. *Big M. Inc. v. Dryden Advisory Group*, Civ. No. 08-3567, 2009 WL 1905106, at *13 (D.N.J. June 30, 2009) (citing N.J. Jury Instr. Civ. 4.10 C). New Jersey requires the agreement to arbitrate be "the product of mutual assent, as determined under customary principles of contract law." *Kernahan v. Home Warranty Adm'r of Florida, Inc.*, 236 N.J. 301, 319 (2019) (quoting *Atalese v. U.S. Legal Services Grp., L.P.,* 219 N.J. 430, 442 (2014)). Likewise, the Third Circuit has held that "[b]efore a party to a lawsuit can be ordered to arbitrate . . . there should be an *express, unequivocal* agreement to that effect." *Kirleis*, 560 F.3d at 161 (quoting *Par-Knit Mills*, 636 F.2d at 54 (alterations and emphasis in original)). If there is doubt whether such agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. *Par-Knit Mills*, 636 F.2d at 54.

At issue in the Motion before the Court, therefore, is whether a genuine issue of material fact remains as to whether the parties entered into a valid agreement to arbitrate. Plaintiff asserts that no arbitration agreement was ever made and that the Bills are not contracts. (Opp'n Br. at 6.)

7

Plaintiff's Owner, Charles Schumann, attests that it is unlikely he would have visited the website addresses "buried inside the paragraphs" within the Invoices. (Schumann Cert. ¶ 11.) Schumann additionally indicates that he "never agreed to waive or limit [his] rights to go to Court under the United States code and never believed [he] was doing so by using Verizon's services." (*Id.* ¶ 12.)

Defendants maintain that the parties have an enforceable compulsory arbitration provision. (Moving Br. at 6.) They argue that Plaintiff's continued use, or silence, should be deemed acceptance of the terms of the arbitration clause. (*Id*. at 9.) Defendants maintain that Plaintiff's "willful ignorance" cannot excuse Plaintiff from its obligations under the governing documents. (*Id*. at 10.)

Defendants attach the Invoices to its Motion papers. (*See* ECF No. 48-2 Exs. B, D, E.) A review of each Invoice indicates that the aforementioned provisions are, in fact, located on the last page within each Invoice. (See § II, *infra*.) The May 2014 Invoice, dated May 26, 2014, indicates the following in relevant part:

> On or after July 14, 2014, Verizon New Jersey Inc. will launch a new online Product Guide at verizon.com/tariffs with the service descriptions, rates and other terms and conditions that apply to your services. . . This change does not affect the prices or the terms or conditions of the services to which you currently subscribe. By ordering, using, or paying for the services, you agree to the prices, terms and conditions as shown in the Product Guide and to any future changes made by Verizon, including price increases, with advance notice to you, as described in the Product Guide.

(ECF No. 48-2 Ex. B at 4.) The July 2015 Invoice, dated July 26, 2016, indicates the following in relevant part:

> On or after September 1, 2015, the service descriptions, rates and other terms and conditions that apply to all intrastate intraLATA competitive services will be contained in Verizon New Jersey Inc.'s Product Guide available at verizon.com/productguides. . . By ordering, using, or paying for the services, you agree to the prices, terms and conditions as shown in the Product Guide and to any

8

> future changes made by Verizon, including price increases, with advance notice to you, as described in the Product Guide.

(ECF No. 48-2 2 Ex. D at 5.)  The September 2015 Invoice, dated September 26, 2015, indicates the following in relevant part:

> In follow up to last year's merger of Verizon Enterprise Solutions LLC into Verizon Long Distance LLC, we have updated your Service Agreement and consolidated the Product Guides that are also a part of your Service Agreement. . . Other changes include the addition of certain provisions already contained in the Product Guide, such as the terms requiring the resolution of any claims or disputes solely by arbitration or small claims court. You can view the current version of your Agreement at www.verizon.com/longdistanceserviceagreement

(ECF No. 48-2 Ex. E. at 3.)

Plaintiff maintains that the "nondescript language" which "nonchalantly cross-referenced other documents" located on the internet was insufficient to create the requisite assent to form an agreement to arbitrate.  (Opp'n Br. at 11.)  Plaintiff asserts there is no evidence of a clear and unambiguous assent to compulsory arbitration, as required by the New Jersey Supreme Court's decision in *Atalese v. U.S. Legal Services*, 219 N.J. 430 (2014).  (*Id.*)

Defendants insist that a valid agreement to arbitrate nevertheless exists between the parties due to Plaintiff's continued use or acceptance of services.  (Reply Br. at 3.)  For support, Defendants attach Plaintiff's payment for the Invoices, each dated within a month after issuance of each Invoice.  (*See* ECF No. 48-2 Exs. B, D, E.)  Defendants further assert that the parties are deemed to have read the terms to which they agreed.  (*Id.* at 4–5.)

Defendants also attach the "current version" of the agreement referenced in the September 2015 Bill.  ("Service Agreement", ECF No. 48-9.)  The arbitration clause within the Service Agreement indicates the following:

> You and we agree to resolve disputes relating to or arising out of the services or the Service Agreement without litigation. Accordingly,

9

> except for: a) actions seeking a temporary restraining order or an injunction related to the purpose of the Service Agreement; b) actions to compel compliance with this dispute resolution process or arbitration award hereunder; or c) as otherwise described below, You and we agree to follow the procedures set forth herein as the sole remedy for any controversy or claim arising out of or relating to the Services or the Service Agreement, including the Product Guides, price lists and calling plans. You and we agree that any such claims arising under the Service Agreement must be pursued only on an individual basis in accordance with the procedures set forth below. Even if applicable law permits class actions or class arbitrations, the procedure agreed to herein applies and You and we each waive any rights to pursue any claim arising under the Service Agreement on a class basis.

(Service Agreement § 6.)

Plaintiff denies having ever received or seeing the Service Agreement until it was shown to Charles Schumann in connection with this litigation. (Schumann Cert. ¶ 6.) Schumann attests that he never saw the website addresses within the Invoices. (*Id*. ¶ 8.) He asserts that he did not need to visit those websites to pay the monthly phone bill or for any other reason. (*Id*.)

Generally speaking, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002). The affiant must set forth specific facts that reveal a genuine issue of material fact. *Id*. A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).

In addition, under New Jersey law, silence may be deemed acceptance "where the particular circumstances reasonably impose on the offeree a duty to speak if the offer is rejected." *Johnson & Johnson v. Charmley Drug Co.*, 11 N.J. 526, 539 (1953). New Jersey courts require an "unqualified acceptance to conclude the manifestation of assent." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992). Where an offeree gives no indication that he objects to any of the

offers' essential terms, and passively accepts the benefits of an offeror's performance, the offeree has impliedly manifested his unconditional assent to the terms of the offer. *Id*. at 436–37. Additionally, accepting an offer creates a "conclusive presumption" that the accepting party read, understood, and assented to the terms." *Giaccone v. Canopius U.S. Insurance. Co*., 133 F. Supp. 3d 668, 674 (D.N.J.) (internal quotation marks omitted). For that reason, a party who fails to read an agreement is not relieved of liability assumed thereunder." *Doug Brady, Inc., v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 175 (D.N.J. 2008).

Further, in New Jersey, incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship. *Nova Corp. v. Joseph Stadelmann Electrical Contractors Inc*., Civ. No. 07-1104, 2008 WL 746672, at *3 (D.N.J. Mar. 18, 2008).

Based on a review of the record, the Court finds that Defendants have met their prima facie burden of establishing a contract by pointing to evidence that: (1) they provided the Invoices to Plaintiff, (2) that Plaintiff paid the invoices, and (3) the parties' ensuing conduct supports the existence of a contract. As such, the burden shifts to Plaintiff to show a genuine issue of material fact exists by presenting sufficient evidence that would permit a jury to find in its favor. *See Carpenter v. Proctor & Gamble Disability Benefit Plan & Benefit Plans Tr.*, 229 Fed. App'x. 170, 171 (3d Cir. 2007).

Here, Plaintiff continued to accept Defendants' services after receiving the notices indicating the updated Service Agreement, which contained the arbitration clause. Plaintiff paid the dollar amount listed on each Invoice. In fact, Plaintiff continued service well after receipt of the September 2015 Invoice. Schumann's assertion that he never saw the website addresses

contained within the Invoices (Schumann Cert ¶ 8) is not a defense to liability of the terms thereunder.  *See See Selective Way Ins. Co., v. Glasstech, Inc*., 191 F. Supp. 350, 359 (D.N.J. 2016).  Each invoice contained a clear reference to a separate document and a clear website URL for the Plaintiff to view the separate document.  The clarity of this incorporation placed Plaintiff on notice of the potential need to engage in further investigation or inquiry into the specific terms and conditions of the parties' agreement.  See id. at 358.  The September 2015 Invoice even specified the terms that had been added, to include "requiring the resolution of any claims or disputes solely by arbitration or small claims court." (ECF No. 48-2, Ex. E at 3.)  Plaintiff gave no indication that it objected to any of the Invoices' essential terms.  Accordingly, the parties formed an agreement to arbitrate.

The New Jersey Supreme Court's decision in *Atalese v. U.S. Legal Services Grp., L.P*., 219 N.J. 430 (2014) does not convince the Court otherwise.  Plaintiff cites *Atalese* to argue that continued use of Defendants' services does not constitute mutual assent to agree to arbitrate. (Opp'n Br. at 16–17.)  Plaintiff contends that there is no mutual assent and understanding when an arbitration clause is unclear or ambiguous and relies on *Atalese*, 219 N.J. at 435.

Under *Atalese*, for an arbitration clause to be enforceable, it must explain clearly that the arbitration constitutes a waiver of the right to a jury trial.  *Id*. at 444.  *Atalese* involved a consumer contract, not a commercial contract between businesses.  *Victory Ent., Inc. v. Schibell*, Civ. No. A-3388-16T2, 2018 WL 3059696, at *8 (N.J. Super. Ct. App. Div. June 21, 2018) (citing *Atalese*, 219 N.J. at 444.)  The Third Circuit's survey of New Jersey Supreme Court and Appellate Division precedent led it to the conclusion that New Jersey "has applied [*Atalese*] thus far only in the context of employment and consumer contracts."  *In re Remicade (Direct Purchaser) Antitrust Litig.,* 938 F. 3d 515, 525 (3d Cir. 2019).

The New Jersey Supreme Court reviewed its decision in *Atalese* in *Kernahan*, 238 N.J. 301. *Kernahan* confirmed that *Atalese* was

> guided essentially by twin concerns. First, the Court was mindful that a consumer is not necessarily versed in the meaning of law-imbued terminology about procedures tucked into form contracts," and "second, the Court was mindful that plain language explanations of consequences had been required in numerous other settings where a person would not be presumed to understand that what was being agreed to constituted a waiver of a constitutional or statutory right.

*Id.* at 319–20 (citing *Atalese*, 219 N.J. at 442–44). The New Jersey Supreme Court concluded that "[t]he consumer context of the contract mattered." *Id.* at 320.

*Kernahan* did not explicitly hold that *Atalese* does not apply outside the consumer context. A subsequent decision of the New Jersey's Appellate Division, however, strongly suggests as much. *See generally Specialty Surfaces Int'l v. Continental Cas. Co.*, 609 F.3d 223, 237 (3d Cir. 2010) (in determining state law, federal courts "follow[ ] relevant decisions of the [highest court] and give [ ] 'due regard, but not conclusive effect' to decisions of the state's lower courts."). In *Dailey v. Borough of Highlands*, for instance, the Appellate Division concluded that *Atalese* was inapplicable to a contract between a business and a municipality, because "*Atalese* was primarily driven by the fact that it was examining a consumer contract" and, generally speaking, "the sophistication of the parties may bear on whether they knowingly and voluntarily agreed to a contract's terms." No. A-3475-19T2, 2020 WL 6297469 at *3, 4 (N.J. Super. Ct. App. Div. Oct. 28, 2020).

Here, Plaintiff is not a consumer within the context of *Atalese*. Plaintiff is an experienced business entity, having been in business since 1954. (Compl. ¶ 2.) While doing business with Defendants, Plaintiff contacted Defendants annually to place a seasonal hold on the Vanity Number. (*Id.* ¶ 9.) Plaintiff has even switched phone companies in the past. (*Id.*) The Court

13

therefore finds that Plaintiff is not a consumer within the context of *Atalese*; the arbitration clause need not have explicitly indicated it constituted a waiver of rights to a jury trial.

Nonetheless, the arbitration agreement clearly explains that the arbitration constitutes a waiver of the right to a jury trial. Specifically, the agreement states that the parties "agree to resolve disputes relating to or arising out of the services or the Service Agreement without litigation" and "[t]here is no judge or jury in arbitration." (Service Agreement § 6.) Further, the arbitration agreement is visibly labeled within the Service Agreement. (*See id.*) Accordingly, the arbitration agreement is valid.

Accordingly, the Court concludes that Plaintiff has failed to show a genuine issue of material fact as to whether the parties agreed to arbitrate.

**B.   WHETHER THE DISPUTE FALLS WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT**

Separately, Plaintiff argues that the arbitration clause does not encompass the parties' dispute because the Service Agreement makes no mention of the issue of disconnection or re-assignment of the Vanity Number. (Opp'n Br. at 22.) Defendants argue that Plaintiff was advised that all disputes regarding Defendants' services would be resolved via arbitration. (Reply Br. at 10.)

> The arbitration clause within the Service Agreement indicates in relevant part:
>
> > You and we agree to resolve disputes relating to or arising out of the services or the Service Agreement without litigation. Accordingly, except for: a) actions seeking a temporary restraining order or an injunction related to the purpose of the Service Agreement; b) actions to compel compliance with this dispute resolution process or arbitration award hereunder; or c) as otherwise described below, You and we agree to follow the procedures set forth herein as the sole remedy for any controversy or claim arising out of or relating to the Services or the Service Agreement, including the Product Guides, price lists and calling plans. You and we agree that any such claims arising under the Service Agreement must be pursued only

> on an individual basis in accordance with the procedures set forth below. Even if applicable law permits class actions or class arbitrations, the procedure agreed to herein applies and You and we each waive any rights to pursue any claim arising under the Service Agreement on a class basis.
>
> [. . .]
>
> You and we both agree to resolve disputes only by arbitration or in small claims court. There is no judge or jury in arbitration, and the procedures may be different, but an arbitrator can award the customer the same damages and relief as a court would. If the law allows for an award of attorneys' fees, an arbitrator can award them too.

(Service Agreement § 6.)

The instant action concerns the cancellation of the Vanity Number supplied by Defendants. (*See generally* Compl.) Plaintiff asserts that Defendants' disconnection and reassignment of the Vanity Number caused damages to Plaintiff in the form of past and future lost revenue and unusable promotional materials. (*Id*. ¶¶ 48, 57, 62.) The dispute here concerns the Service Agreement and Defendants' inadvertent cancellation thereof. The Arbitration agreement specifically states that "disputes relating to or arising out of Defendants' services are subject to arbitration." Cancellation of the Vanity Number is therefore encompassed by the Services Agreement. As such, the dispute falls within the scope of the enforceable arbitration agreement.

## V.     CONCLUSION

For the reasons stated above, the Court will GRANT the Motion to Compel Arbitration. An appropriate Order follows.

Date: **January 23, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
